UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA


ANTHONY L. GEORGE                          CIVIL ACTION


v.                                         NO. 16-1286


MARQUETTE TRANSPORTATION COMPANY           SECTION "F"
GULF-INLAND, LLC, ET AL.


ORDER AND REASONS

Before the Court is Marquette Transportation Company Gulf-Inland, LLC's motion for summary judgment.  For the reasons that follow, the motion is DENIED.

**Background**

This Jones Act litigation arises out of a lead deckhand's claim that he twisted his ankle and injured his back and hip after tripping over rigging equipment cluttering the fleet deck on which he was working.

Anthony L. George began working for Marquette Transportation Company Gulf-Inland in March 2014 as a senior deckhand.  Mr. George was experienced and well trained as a deckhand, and he was familiar with Marquette's safety manual and vessel operating procedures.

1

Mr. George was promoted to leadman (lead deckhand) and in late May 2015, he started working aboard the towing vessel, M/V REDEEMER.

On June 6, 2015, Mr. George came on watch to build a tow that the front watch had started. As he was finishing building a tow of empty barges with his subordinate coworker, Marquette deckhand Caleb Smith, Mr. George crossed from the tow to the REDEEMER's fleet deck to retrieve a wire when he stepped on visible rigging equipment, specifically, a coiled wire, and rolled his ankle.[1]

Measuring 16 feet by 11 feet and located above the bow main deck in between the pushknees, the fleet deck is customarily used to store rigging equipment for tow operations. It was industry practice to store rigging equipment on the fleet deck, where it

---

[1] The precise mechanics of the alleged incident are disputed. The June 6, 2015 Marquette Personal Injury/Illness Report indicates that Mr. George stepped on wire and rolled his right ankle. And Caleb Smith states under oath that he witnessed Mr. George "step directly on a bundle of wires, slowly fall over and ease himself on to the fleet deck before grabbing his ankle despite having ample walkway area on the REDEEMER's fleet deck." But Mr. George recently testified in his deposition not that he stepped on the wire, but that "the wire kicked back" and "caught [his] ankle," which caused Mr. George to twist his ankle and fall on his right hip and lower back. Mr. George explains that the wire that caused him to fall was not properly coiled; it uncoiled and hit his right leg, twisting his ankle. Mr. George says he fell on some ratchets that were directly behind him on the fleet deck. Mr. Smith disputes this account; he says "[t]he eye of the wire did not catch Anthony George's ankle and did not spring out of its organized stack; instead, George stepped directly on the wire and fell over slowly."

would be accessible for building tow.  Indeed, Mr. George was

familiar with this standard practice, which was routine while

working for Marquette as well as when he worked for prior

employers.  As a deckhand, it was Mr. George's duty to keep the

fleet deck clean and organized; that is, after the process of

building tow is complete, Mr. George was tasked with organizing

the fleet deck.  Nonetheless, on the day of the incident, Mr.

George claims that there were no clear walkways, that "everything

(sic) that you step, you stepping on top of something."[2]

Prior to working for Marquette, Mr. George had worked for

other companies as a deckhand and was experienced in conducting

nearly identical tow operations on similar pushboats with fleet

decks.  While working for Marquette, Mr. George had attended over

100 weekly safety meetings and had signed daily safety reports on

---

[2] This fact is disputed by Caleb Smith, who states under oath that
there was "ample walkway" on the fleet deck and that the REDEEMER
crew:

> kept all tools, including rigging, wires, lines,
> ratchets, and slings on the REDEEMER's fleet deck so
> that all equipment is easily accessible for working on
> the tow.  We kept all equipment in an organized manner
> to allow sufficient walkways on the port and starboard
> side of the equipment and around the individual sections
> of the equipment[.]
> ...
> At the time of [the] incident, the fleet deck was
> organized with the rigging wires stacked three to four
> high in a circular stack forming a square of four stacks
> of wires[.]

the topics of safely building tow and tripping hazards. Mr. George had crossed between the fleet deck and the tow safely hundreds of times without prior incidents during his deckhand career, and in his deckhand training, he was aware of the routine precautions for transitioning between a vessel and a barge, including being aware of his surroundings and tripping hazards, which deckhands are trained to avoid.

On four separate occasions prior to his alleged accident, Mr. George observed the rigging on the fleet deck. Mr. George first observed the rigging on the fleet deck when he came on watch. He noticed the rigging on the fleet deck a second time while he was attempting to throw rigging equipment from the pushknee near the fleet deck over to the tow. Mr. George saw the rigging on the fleet deck a third time as he went to cross over from the pushknee of the REDEEMER onto the tow. Finally, Mr. George saw the rigging on the fleet deck for a fourth time just before his incident when he looked down directly at the equipment as he stepped onto the fleet deck. Mr. George says he took a step to retrieve one wire from the fleet deck to complete his task while another wire "kicked back" and caused him to fall. Caleb Smith witnessed Mr. George's accident. Smith crossed over the same area without incident.

On February 15, 2016, Mr. George sued Marquette Transportation Company Gulf-Inland, LLC and Marquette Transportation Company, LLC, alleging that defendants' negligence under the Jones Act caused his injuries; he also alleges that the defendants owe him maintenance and cure. On April 29, 2016, the Court granted the plaintiff's motion to dismiss Marquette Transportation Company, LLC. The remaining defendant, Marquette Transportation Company Gulf-Inland, LLC, now seeks summary judgment in its favor, dismissing the plaintiff's Jones Act claim.

I.

Federal Rule of Civil Procedure 56 instructs that summary judgment is proper if the record discloses no genuine dispute as to any material fact such that the moving party is entitled to judgment as a matter of law. No genuine dispute of fact exists if the record taken as a whole could not lead a rational trier of fact to find for the non-moving party. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986). A genuine dispute of fact exists only "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).

The mere argued existence of a factual dispute does not defeat an otherwise properly supported motion. See id. In this regard,

the non-moving party must do more than simply deny the allegations raised by the moving party.  See Donaghey v. Ocean Drilling & Exploration Co., 974 F.2d 646, 649 (5th Cir. 1992).  Rather, he must come forward with competent evidence, such as affidavits or depositions, to buttress his claims.  Id.  Hearsay evidence and unsworn documents that cannot be presented in a form that would be admissible in evidence at trial do not qualify as competent opposing evidence.  Martin v. John W. Stone Oil Distrib., Inc., 819 F.2d 547, 549 (5th Cir. 1987); Fed. R. Civ. P. 56(c)(2). "[T]he nonmoving party cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence."  Hathaway v. Bazany, 507 F.3d 312, 319 (5th Cir. 2007)(internal quotation marks and citation omitted). Ultimately, "[i]f the evidence is merely colorable . . . or is not significantly probative," summary judgment is appropriate.  Id. at 249 (citations omitted); King v. Dogan, 31 F.3d 344, 346 (5th Cir. 1994) ("Unauthenticated documents are improper as summary judgment evidence.").

Summary judgment is also proper if the party opposing the motion fails to establish an essential element of his case.  See Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986).  In deciding whether a fact issue exists, courts must view the facts and draw reasonable inferences in the light most favorable to the non-

moving party.  Scott v. Harris, 550 U.S. 372, 378 (2007).  Although

the Court must "resolve factual controversies in favor of the

nonmoving party," it must do so "only where there is an actual

controversy, that is, when both parties have submitted evidence of

contradictory facts."  Antoine v. First Student, Inc., 713 F.3d

824, 830 (5th Cir. 2013)(internal quotation marks and citation

omitted).

II.

*A.*


Under the Jones Act, 46 U.S.C. § 688, a seaman's employer is

liable for damages if the employer's negligence caused the seaman's

injury, in whole or in part.  Gautreaux v. Scurlock Marine, Inc.,

107 F.3d 331, 335 (5th Cir. 1997)(en banc).  To prevail in a Jones

Act negligence claim,

> the plaintiff must present some evidence from which the
> fact finder can infer that an unsafe condition existed
> and that the vessel owner either knew, or in the exercise
> of due care should have known, of the condition.


Martinez v. Offshore Specialty Fabricators, Inc., 481 Fed.Appx.

942, 945, 947 (5th Cir. July 25, 2012) (citing Perry v. Morgan

Guar. Trust Co. of N.Y., 528 F.2d 1378, 1379 (5th Cir. 1976)).

A Jones Act employer has the duty to provide his seaman employees with a reasonably safe place to work. Colburn v. Bunge Towing, Inc., 883 F.2d 372, 374 (5th Cir. 1989). The duty to provide a safe place to work is broad in scope, but it is not a form of strict liability; ordinary prudence under the circumstances is the standard for the duty of care owed by an employer to a seaman. Gautreaux, 107 F.3d at 335-36. An employer breaches that duty if it fails to exercise ordinary prudence and is thereby negligent. Id. at 339. "A shipowner in a Jones Act case has a duty to warn his employees 'in an effective way of dangers not reasonably known.' In other words, shipowners need not warn seamen of dangers that are 'open and obvious.'" Patterson v. Allseas USA, Inc., 137 Fed.Appx. 633, 637 (5th Cir. 2005)(citations omitted).

For his part, a seaman is held to the standard of the reasonable seaman in like circumstances. Gautreaux, 107 F.3d at 339 (explaining that the circumstances include the employee's reliance on his employer to provide a safe working environment, the seaman's experience, training, or education). And the causation standard is the same for both the employer's negligence and contributory negligence: causation is established if the party's "negligence played any part, even the slightest, in producing the injury". See Martinez, 481 Fed.Appx. at 947 (quoting

Johnson v. Cenac Towing, Inc., 544 F.3d 296, 303 (5th Cir. 2008)).

However, more than mere "but for" causation must be established.

Johnson v. Cenac Towing, Inc., 544 F.3d 296, 302 (5th Cir. 2008)(citation omitted).

*B.*

To succeed on his Jones Act negligence claim at trial, Mr. George must prove that Marquette's negligent breach of duty caused his injury; he must present some evidence from which the fact finder can infer that an unsafe condition existed (here, the allegedly disorganized rigging equipment cluttering the fleet deck) and that Marquette knew or should have known of the unsafe condition. Marquette seeks judgment as a matter of law on the ground that Marquette is not liable for plaintiff's injuries, which resulted from him tripping on an open and obvious hazard in an area that he was responsible for keeping clean and organized, and in an area he was familiar with and had experience with. Mr. George opposes summary judgment on the ground that triable issues remain.

The defendant focuses its summary judgment argument on the ground that it did not breach a duty to warn the plaintiff about

the presence of rigging equipment on the fleet deck.[3]  However, viewing the facts in the light most favorable to the plaintiff, this duty to warn theory is not the one advanced by the plaintiff in support of his Jones Act claim.  Rather, the plaintiff's testimony "I mean they didn't have any walkways...everything (sic) that you step, you stepping on top of something.  They didn't have no free walkway" forms the factual predicate for his Jones Act claim.  And his manipulation of Rule 56.  By contending that the cluttered fleet deck had no walkways, the plaintiff's theory for recovery is that Marquette (whose employees on the prior watch allegedly left the fleet deck in this unsafe condition, which Mr. George felt too rushed by the captain to clean up himself before completing the task of building tow) breached its general duty to provide a reasonably safe work environment.  This is a simple case, but triable issues remain.

There is one factual controversy that precludes summary judgment on the issue of whether Marquette beached its duty to provide Mr. George with a reasonably safe place to work.[4] Marquette submits evidence, through Mr. Smith's sworn statement, that at the

---

[3] If this was the sole theory of recovery advanced by the plaintiff, the Court might agree with the defendant's arguments in support of its motion that it did not breach any duty to warn about the presence of the rigging equipment.
[4] Of course, the Court need not reach the other triable issue concerning comparative fault.

time of the incident, the fleet deck had "ample walkway," that all

rigging equipment was kept in an organized and accessible manner

"with the rigging wires stacked three to four high in a circular

stack forming a square of four stacks of wires[.]"  If Mr. Smith's

account is credible, then Marquette did not breach its duty to

provide a reasonably safe work environment.    But Mr. George's

sworn deposition testimony -- in which he states that there was no

walkway because the workspace was cluttered with rigging equipment

left by the prior crew -- directly conflicts Mr. Smith's, thereby

creating a triable issue concerning whether the fleet deck was

unreasonably cluttered to the point of rendering it unsafe.[5]

---

[5] The plaintiff suggests that the dispute concerning the mechanics
of his injury is also a genuine dispute concerning a material fact.
The Court disagrees.  Although the parties dispute whether or not
Mr. George was injured when a wire "kicked back" twisting his
ankle, or whether Mr. George simply stepped on a coil of wire,
this issue is not material to the issue of whether or not the work
environment was reasonably safe.  Nevertheless, the Court is
compelled to observe that this is another issue pitting Mr.
George's word against Mr. Smith's.  Although this Court is
forbidden from making credibility determinations on summary
judgment, the jury will be charged with judging the credibility of
these witnesses, who have already given completely opposing sworn
statements.  This causes concern that one or more of the parties
or witnesses to this case fails to appreciate the criminal
consequences of lying under oath.  Counsel should be aware that
this Court will not hesitate to refer anyone suspected of perjury
to the United States Attorney's Office and related agencies for
investigation.

III.

*A.*

In his opposition papers, the plaintiff argues the merits of
an unseaworthiness claim.  In its reply paper, the defendant
contends that no unseaworthiness claim was alleged in either the
complaint or amended complaint.  The Court agrees.  In his
complaint and amended complaint, Mr. George alleges only two
claims: one for Jones Act negligence and a second regarding
Marquette's obligation to provide maintenance and cure.  Mr. George
has not alleged an unseaworthiness claim and, accordingly, no such
claim need be addressed by the defendant or by the Court.

*B.*

In his complaint and amended complaint, Mr. George seeks to
recover maintenance and cure.[6]

"Maintenance and cure is an ancient duty imposed on a
shipowner to provide for a seaman who becomes ill or injured during
his service to the ship."  Silmon v. Can Do II, Inc., 89 F.3d 240,
242 (5th Cir. 1996).  This duty is implied in maritime employment

---

[6] In his "second cause of action" pertaining to maintenance and
cure, Mr. George seeks to recover maintenance and cure, to recover
for arbitrary refusal to investigate and pay maintenance and cure,
as well as a claim for punitive damages for Marquette's alleged
refusal to honor its cure obligation.

contracts and exists regardless of whether the shipowner was at fault or the vessel unseaworthy. O'Donnell v. Great Lakes Dredte & Dock Co., 318 U.S. 36, 41-42 (1943); Guevara v. Maritime Overseas Corp., 59 F.3d 1496, 1499 (5th Cir. 1995), *abrogated on other grounds by* Atlantic Sounding Co., Inc. v. Townsend, 129 S.Ct. 2561 (2009). "Maintenance" is the right of a seaman to food and lodging if he becomes injured while performing his duties to the ship. Guevara, 59 F.3d at 1499. "Cure" is the right to necessary medical services. Id.[7]

In its motion for summary judgment, Marquette does not mention the plaintiff's allegation that he is owed maintenance and cure or damages associated with failure to pay maintenance and cure. Because the Court has no facts before it on this issue, and there is no indication by either party regarding whether or not Mr. George has reached maximum medical improvement, the issue of entitlement to maintenance and cure or damages for wrongful failure to pay maintenance and cure cannot be considered at this time.

---

[7] Before recovering maintenance and cure, the seaman bears the burden of establishing: (1) his engagement as a seaman; (2) his illness or injury occurred, was aggravated or manifested itself while in the ship's service; (3) the wages to which he may be entitled; and (4) the expenditures or liability incurred by him for medicine, nursing care, board and lodging. Harrison v. Diamond Offshore Drilling, Inc., C.A. No. 07-417, 2008 WL 708076, at *14 (E.D. La. March 6, 2008)(Vance, J.)(citation omitted).

Accordingly, for the foregoing reasons, IT IS ORDERED: that the defendant's motion for summary judgment is hereby DENIED.

New Orleans, Louisiana, June 28, 2017

_____

MARTIN L. C. FELDMAN
UNITED STATES DISTRICT JUDGE